NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

```
_____
                               :
WILLIAM ROBERT PILKEY,         :
                               :        Civil Action
              Plaintiff,       :        05-5417 (JBS)
                               :
         v.                    :        O P I N I O N
                               :
H. LAPPIN, et al.,             :
                               :
              Defendants.      :
_____:
```

**APPEARANCES:**

WILLIAM ROBERT PILKEY, pro se
#06633-081
Federal Prison Camp
1900 Simler Avenue
Big Springs, Texas 79720

**SIMANDLE, District Judge:**

Plaintiff William Robert Pilkey (hereinafter "Plaintiff") currently confined at the Federal Prison Camp, Big Springs, Texas, seeks to bring this action in forma pauperis without prepayment of fees pursuant to 28 U.S.C. § 1915. Plaintiff submitted his (1) affidavit of indigence and institutional account statement pursuant to 28 U.S.C. § 1915(a) (1998); (2) his complaint (hereinafter "Complaint"); (3) a memorandum of law (hereinafter "Memorandum");

and (4) various attachments and exhibits.[1] Based on his affidavit of indigence and the absence of three qualifying dismissals within 28 U.S.C. § 1915(g), as of the date of this Opinion and accompanying Order, the Court will grant plaintiff's application to proceed in forma pauperis pursuant to 28 U.S.C. § 1915(a) (1998) and order the Clerk of the Court to file the Complaint.

Plaintiff's Complaint alleges that the Bureau of Prisons (hereinafter "BOP") and the staff of the F.C.I. Fort Dix, the place of Plaintiff's then confinement, "violated Plaintiff's Eighth Amendment rights by holding Plaintiff in [a] special housing unit ([hereinafter] "SHU") for 171 days," and did so without following Plaintiff's detention by "any type of sanction." Compl. at 2 (capitalization removed). It appears that, "[o]n May 11, 2004[, Plaintiff] was taken to the . . . SHU [because of] an . . . investigation dealing with [Plaintiff's] legal work." Compl. at 4, 29.[2] The order providing for Plaintiff's administrative detention

_____

[1]

Plaintiff's instant Complaint was received by this Court November 9, 2005. Also, on the very same day, this Court received three other complaints from Plaintiff. See Pilkey v. Lappin, 05-5418, Pilkey v. Lappin, 05-5314, and Pilkey v. Lappin, 05-5419. Another complaint by Plaintiff was received by the Court on October 24, 2005. See Pilkey v. Monmouth County Correctional Institution, 05-5073.

[2]

Plaintiff designated a number of attachments to his Complaint as "Exhibits," and numerated such exhibits by Roman numerals. However, Plaintiff's numeration was made in such fashion as to produce two Exhibits IV, both of which are referred to in this Opinion. Therefore, for the purposes of citing to Plaintiff's application, this Court uses the pagination used by Plaintiff in

was issued by Lt. Lewars.[3]  <u>See</u> Ex. IV.  Apparently, the "legal

work" conduct which led to detention of Plaintiff involved a group

of other inmates and equally subjected these inmates to

administrative detention since, two weeks later,

> [o]n or about May 25, 2004[,] Lt. Lewars came by the
> recreation yard and told all the inmates that was locked
> up on May 11, 2004, that [Lt. Lewars'] investigation was
> over, but an outside agency would be here to talk to each
> of [these inmates.  Plaintiff] asked Lt. Lewars, "[W]hat
> agency and what are we being investigated for?" [but Lt.]
> Lewars refused to answer.

Compl. at 4.

Contrary to Lt. Lewars' statement, and solely on the basis of

Lt. Lewars' refusal of further clarifications, Plaintiff concluded

that, "[i]n other words[, Plaintiff] was in administrative

detention for another purpose [than the] investigat[ion related to]

"legal work." <u>Id.</u> Since Plaintiff (1) "was kept in administrative

confinement for . . . 156 days" after Lt. Lewars' statement, (2)

---

order to avoid undue confusion.

[3]

Plaintiff's instant Complaint is silent as to what kind of
"legal work" led to the administrative detention order.  However,
Plaintiff's Complaint in <u>Pilkey v. Lappin</u>, 05-5418, indicates
that Plaintiff's SHU detention was caused by an investigation as
to whether Plaintiff's rendition of "legal assistance" to other
inmates and Plaintiff's keeping legal paperwork of other inmates
in Plaintiff's possession were permissible or proper.  <u>See</u> <u>Pilkey
v. Lappin</u>, 05-5418, Compl. at 5, 15 ("Within three days of going
to SHU, I started asking to go to the law library, because I
wanted to know what the staff [of the F.C.I. Fort Dix] could do
to me for helping other inmates with their legal work," "[I]t
would appear that a prison regulation could not forbid the
jailhouse lawyer from having the papers of another inmate in his
. . . possession").

"asked Lt. Lewars for [an] additional paperwork on the improper
infraction[] that [Plaintiff] was being held on[, but] Lt. Lewrars
refused to discuss the [ongoing agency] investigation" with
Plaintiff, Plaintiff states that the "[p]unishment [of detention
for 156 days after Lt. Lewars' statement was] disproportionate to
the offense committed [and, hence,] violated the Eighth
Amendment." <u>Id.</u> at 5-6 (capitalization removed).   Plaintiff,
therefore, requests this Court to grant Plaintiff "relief in the
sum of three million dollars." <u>Id.</u> at 6.

**STANDARD OF REVIEW**

In 1996, Congress enacted the Prison Litigation Reform Act
("PLRA"), Title VIII of the Omnibus Consolidated Rescissions and
Appropriations Act of 1996, Pub. L. No. 104-134, 110 Stat. 1321
(April 26, 1996).   Congress's purpose in enacting the PLRA was
"primarily to curtail claims brought by prisoners under 42 U.S.C.
§ 1983 and the Federal Tort Claims Act . . . many of which are
routinely dismissed as legally frivolous." <u>Santana v. United
States</u>, 98 F.3d 752, 755 (3d Cir. 1996).   A crucial part of the
congressional plan for curtailing meritless prisoner suits is the
requirement, embodied in 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b),
that a court must dismiss, at the earliest practicable time, any
prisoner actions that are frivolous or malicious, fail to state a
claim, or seek monetary relief from immune defendants.   However, in
determining the sufficiency of a complaint, the Court must be

-4-

mindful to construe it liberally in favor of the plaintiff.  See Haines v. Kerner, 404 U.S. 519 (1972); United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992).  The Court should "accept as true all of the allegations in the complaint and reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff."  Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997).  The Court need not, however, lend credit to a pro se plaintiff's "bald assertions" or "legal conclusions."  Id.  Thus, "[a] pro se complaint may be dismissed for failure to state a claim only if it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'"  Milhouse v. Carlson, 652 F.2d 371, 373 (3d Cir. 1981) (quoting Haines v. Kerner, 404 U.S. 519, 520 (1972)).

## DISCUSSION

Plaintiff asserts that Defendants' action of confining Plaintiff in administrative custody for 156 days after alleged statement made by Lt. Lewars amounted to cruel and unusual punishment.[4]  Although the Eighth Amendment, which prohibits infliction of cruel and unusual punishment, guarantees that prison officials must provide humane conditions of confinement, the

---

[4]

Plaintiff does not challenge the validity of his administrative detention from May 11, 2005, to May 25, 2005.  See generally, Compl.

-5-

Constitution "does not mandate comfortable prisons." Rhodes v. Chapman, 452 U.S. 337, 349 (1981). Hence, prison officials must merely ensure that inmates receive adequate food, clothing, shelter and medical care, and must "take reasonable measures to guarantee the safety of the inmates." Farmer v. Brennan, 511 U.S. 825, 832 (1994) (quoting Hudson v. Palmer, 468 U.S. 517, 526-27 (1984)). A prolonged administrative detention, by itself, does not amount to a cruel and unusual punishment. See Sharp v. Johnson, 2005 U.S. Dist. LEXIS 36322 (W.D. Pa. Dec. 28, 2005) (plaintiff's allegations that defendants' actions in confining him in administrative custody for over thirty months amounted to cruel and unusual punishment did not state a claim upon which relief may be granted). A violation of the Eighth Amendment's prohibition against cruel and unusual punishment requires showing of two elements. First, a prisoner must show that the condition, either alone or in combination with other conditions, deprived him of "the minimal civilized measure of life's necessities," or at least a "single, identifiable human need." Wilson v. Seiter, 501 U.S. 294 (1991) (citing Rhodes v. Chapman, 452 U.S. at 347). Second, the prisoner must demonstrate deliberate indifference to prison conditions on the part of prison officials. See Farmer, 511 U.S. at 833; Wilson, 501 U.S. at 297; Rhodes, 452 U.S. at 347. This second prong requires the Court to subjectively determine whether the officials acted with a sufficiently culpable state of mind. See id. "Only the

-6-

unnecessary and wanton infliction of pain implicates the Eighth Amendment." Farmer, 511 U.S. at 834 (quotation omitted).

Plaintiff's instant Complaint does not indicate that either Lt. Lewars or any other prison official acted "maliciously and sadistically for the very purpose of causing harm," Hudson v. McMillian, 503 U.S. 1, 6 (1992), rather than in a good-faith effort to comply with the undergoing investigation. Assuming prison officials refused to discuss with Plaintiff the specifics of the undergoing agency investigation, a refusal of prison officials to satisfy an inmate's curiosity about agency activity (which might be unknown to the prison officials) cannot amount to a violation of the Eighth Amendment.

Moreover, Plaintiff's claims concerning the conditions of administrative custody do not state a claim upon which relief may be granted. See Griffin v. Vaughn, 112 F.3d. 703 (3d Cir. 1997) (restrictive conditions in administrative custody in correctional institutions, in and of themselves, do not violate the Eighth Amendment). Liberty interests are "generally limited to freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 483-84 (1995) (citations omitted). Therefore, "confinement in administrative or punitive segregation will rarely be sufficient, without more, to establish the kind of 'atypical' deprivation of prison life

-7-

necessary to implicate a liberty interest." <u>Smith v. Mensinger</u>, 293 F.3d 641, 654 (3d Cir. 2002) (citing <u>Sandin</u>, 515 U.S. at 486).

The Third Circuit has instructed that, "in deciding whether a protected liberty interest exists under <u>Sandin</u>, [the Court should] consider the duration of the disciplinary confinement and the conditions of that confinement in relation to other prison conditions." <u>Mitchell v. Horn</u>, 318 F.3d 523, 532 (3d Cir. 2003). Moreover, in <u>Mensinger</u>, the Third Circuit clarified that seven months of disciplinary detention "do[] not . . . violate a protected liberty interest as defined in <u>Sandin</u>." 293 F.3d at 654. Hence, to avoid dismissal, Plaintiff should have alleged facts from which it could reasonably be inferred that he was subjected to conditions during disciplinary segregation that imposed atypical and significant hardships on him in relation to the ordinary incidents of prison life. Plaintiff has not alleged such facts.

Plaintiff complains that: (1) some of Plaintiff's property was removed,[5] <u>see</u> Compl. at 11; (2) Plaintiff's choice of dietary

_____

[5]
     Plaintiff does not specify the property that was removed from Plaintiff, rather he refers the Court to the "Confiscation and Disposition of Contraband" form (hereinafter "Form"). <u>See</u> Compl. at 36.  The Form is equally silent as to the property that was removed from Plaintiff, it merely (1) designates Plaintiff's daughter as the recipient of contraband items not subject to destruction, and (2) indicates that mailing expenses could be covered by the prison for indigent inmates. <u>See</u> <u>id.</u> Since neither Plaintiff's Complaint nor the Form suggests that the items removed from Plaintiff were such that Plaintiff's existence without them amounted to cruel and unusual punishment (e.g., these items were not an irreplaceable life-supporting medicine), this dispossession is irrelevant to Plaintiff's Eighth Amendment claim.

-8-

dishes was reduced since commissary privileges of SHU inmates were less than those of other inmates, see id. at 10-11; (3) Plaintiff, same as other "[i]nmates in SHU[, had to] wear orange jump suit while the other inmates . . . wear brown shirts and pants," id. at 13;[6] (4) Plaintiff, same as other "SHU inmates[, was] allowed one hour a day [of] exercise on Monday thru Friday, [but] no exercise on Saturdays and Sundays," id. at 13 (capitalization removed); (5) Plaintiff, same as other "SHU inmates[, got] to use the phone 10 [to 15] minutes a month[, while other] inmates [got] 300 minutes a month" id.; (6) Plaintiff, same as other "SHU inmates[, could have his] visit[s only] on Thursdays [while other] inmates [can go to visit several times a week, id.; (7) Plaintiff was subjected to rude language, see id. at 16 (Lt. Lewars' statement, "Pilkey[,] your white ass is becoming a pain in my ass"); and (8) Plaintiff could not take his shower on daily basis.[7]  See id. at 9.

---

[6]

    Plaintiff also points out that "[w]hat is unfair here, the SHU inmates have to visit in orange jump suits that they have been wearing for several days, while [other] inmates ha[ve] creases on [their] pants and [their] hair is neatly combed."  Compl. at 13.

[7]

    While in the SHU[, Plaintiff] was diagnosed with Balantis.  Balantis often occurs with men who were not circumcised[,] and it requires the penis to be kept cleaned.  . . .  [Plaintiff] asked to take a shower every day [but a prison official] refused to let [Plaintiff] take a shower daily because it was against the rules . . . . .  [Plaintiff] understand[s] that going to the SHU did not cause [his] Balantis . . . .

Compl. at 9.

These grievances do not rise to the level of an atypical or significant hardship.  See, e.g., Overton v. Bazzetta, 539 U.S. 126 (2003) (noting that there is no constitutional right to visits for inmates and clarifying that "[t]he very object of imprisonment is confinement.  Many of the liberties and privileges enjoyed by other citizens must be surrendered by the prisoner.  An inmate does not retain rights inconsistent with proper incarceration.  Freedom of association is among the rights least compatible with incarceration.  Some curtailment of that freedom must be expected in the prison context"); Leon v. Schaaff, 2005 U.S. Dist. LEXIS 22462, at *3 (D.N.J. Sept. 23, 2005) (lost commissary and telephone privileges and placement in disciplinary confinement for 120 days do not impose atypical and significant hardship upon an inmate); Troy v. Kuhlmann, 1999 U.S. Dist. LEXIS 16027, at *12 (S.D.N.Y. Oct. 15, 1999) ("denial of privileges such as telephone, package, and commissary privileges do not represent the type of deprivation which could reasonably be viewed as imposing an atypical and significant hardship on the inmate"); see also Stepney v. Gilliard, 2005 U.S. Dist. LEXIS 31889, at *19 (N.J.D. Dec. 8, 2005) ("verbal harassment and taunting is neither 'sufficiently serious' nor 'an unnecessary and wanton infliction of pain' under the common meaning

---

Plaintiff neither asserts that Plaintiff was denied access to running water in the sink on daily basis nor indicates that Plaintiff was prohibited from washing his genitals, either in the sink or by a washcloth, during those days when shower was prohibited to Plaintiff by the rules.  See generally, Compl.

of those terms.  'Verbal harassment or profanity alone . . . no matter how inappropriate, unprofessional, or reprehensible it might seem,' does not constitute the violation of any federally protected right and therefore is not actionable under [Section] 1983") (quoting Shabazz v. Pico, 994 F. Supp. 460, 474 (S.D.N.Y. 1998), and citing Collins v. Graham, 377 F. Supp. 2d 241, 244 (D. Me. 2005)); accord  Sealey v. Giltner, 197 F.3d 578 (2d Cir. 1999) (finding no violation of the Eighth Amendment where "[a]n inmate [was] confined to his cell 23 hours per day, [could] take no more than three showers per week, ha[d] limited library privileges and no telephone privileges); French v. Owens, 777 F.2d 1250, 1255 (7th Cir. 1985) (pointing out that lack of exercise may rise to a constitutional violation only if the deprivation is such that "movement is denied [to such extent that] muscles are allowed to atrophy [and] the health of the individual is threatened"); Phillips v. Norris, 320 F.3d 844 (8th Cir. 2003) (loss of privileges of contact visitations, yard and gym call, and chapel did not violate the Eighth Amendment); Thomas v. Ramos, 130 F.3d 754 (7th Cir. 1997) (where an inmate asserted that, while in segregation, he was not permitted to take any classes, use the gym, work at an assignment, earn pay, have access to a "day room," or take programs offered to inmates in the general population and protective custody, the court properly found that the disciplinary segregation was not "atypical and significant hardship" and

-11-

dismissed the Eighth Amendment claim); Shorter v. Lawson, 403 F. Supp. 2d 703 (N.D. Ind. 2005) (finding no constitutional violation where an inmate had to wear "bright orange jumpsuit [which was the] segregation uniform"). Finally, the fact that Plaintiff was not subjected to any sanctions after his release from SHU does not indicate that Plaintiff's detention was a "cruel and unusual punishment," since--as Plaintiff himself correctly noted--"the proper purpose of isolated confinement [is] maintenance of order *within the investigation*," Compl. at 4 (emphasis supplied, citations omitted); and such detention does not have to be followed by sanctions imposed upon release.

Since there is no basis to infer that the conditions to which Plaintiff was subjected while in disciplinary segregation imposed "atypical and significant hardships" upon him in comparison to the ordinary incidents of prison life, and since there is no indication that the prison officials kept Plaintiff in detention "maliciously and sadistically for the very purpose of causing harm," this Court concludes that Plaintiff failed to allege that he was deprived of a protected liberty interest or that his disciplinary detention amounted to "cruel and unusual punishment."

**<u>CONCLUSION</u>**

For the foregoing reasons, Plaintiff's application to proceed <u>in</u> <u>forma</u> <u>pauperis</u> is hereby GRANTED.   Plaintiff's Complaint is DISMISSED for failure to state a claim upon which relief may be granted.   An appropriate Order accompanies this Opinion.


**<u>s/ Jerome B. Simandle</u>**
JEROME B. SIMANDLE
U.S. District Judge


Dated:   **June 26, 2006**